## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                              Plaintiff,                   Case No. _____

          v.                                              **COMPLAINT**

ESTATE OF ELZIE COCKERHAM
704 W. Melvina Street
Milwaukee, WI 53206,

ESTATE OF DAISY M. COCKERHAM
704 W. Melvina Street
Milwaukee, WI 53206,

JEROME COCKERHAM
704 W. Melvina Street
Milwaukee, WI 53206,

                              Defendants.

---

Comes now the plaintiff, the United States of America, by Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Carter B. Stewart, Assistant United States Attorney for said District, and for its cause of action alleges that:

1.       This is a civil action brought by the United States of America under 28 U.S.C. §1345.

2.       The United States seeks to foreclose a reverse mortgage between Elzie and Daisy Cockerham and the Department of Housing & Urban Development ("HUD").   For reverse mortgages, payment of the debt is made not by monthly payments, but rather by the sale of the mortgaged premises.

3.       Elzie and Daisy Cockerham executed and delivered to Norwest Mortgage Inc. a promissory note dated April 3, 1998, attached hereto as Exhibit A.

4.      To secure said note, Elzie and Daisy Cockerham executed and delivered to Norwest Mortgage Inc., its successors and assigns, an Adjustable Rate Home Equity Conversion Mortgage dated April 3, 1998, attached as Exhibit B.

5.      On April 3, 1998, Norwest Mortgage, Inc. assigned their interest in the Note and Mortgage to Wendover Financial Services Corporation, a copy of which is hereto annexed as Exhibit C.

6.      On October 31, 2000, Wendover Financial Services Corporation assigned their interest in the Note and Mortgage to Lehman Capital, A Division of Lehman Brothers Holdings, Inc., a copy of which is hereto annexed as Exhibit D.

7.      On May 5, 2004, Lehman Capital, A Division of Lehman Brothers Holdings, Inc. assigned their interest in the Note and Mortgage to Financial Freedom Senior Funding Corporation, a copy of which is hereto annexed as Exhibit E.

8.      On June 9, 2009, Financial Freedom Senior Funding Corporation assigned their interest in the Note and Mortgage to Financial Freedom Acquisition, LLC, a copy of which is hereto annexed as Exhibit F.

9.      Said mortgage was assigned to the Secretary of Housing and Urban Development on October 8, 2009.   A copy of the assignment annexed as Exhibit G.

10.     Elzie and Daisy Cockerham also executed and delivered to the Secretary of Housing and Urban Development a Home Equity Conversion Adjustable Rate Second (Promissory) Note and a second Adjustable Rate Home Equity Conversion Mortgage both dated April 3, 1998 to secure the reverse mortgage.   Copies of the second note and mortgage are attached hereto as Exhibits H and I.

11.     Elzie Cockerham passed away on April 16, 2005; a screen print from the Social

Security Death Index webpage is hereto annexed as Exhibit J.

12. Daisy M. Cockerham passed away on September 12, 2011, a screen print from the Social Security Death Index webpage is hereto annexed as Exhibit K.

13. No action has been filed to probate the Estate of either Elzie Cockerham or Daisy Cockerham.

14. A Transfer [of the Property] by Affidavit In the Matter of Elzie & Daisy Cockerham was filed with the Milwaukee County Register of Deeds on June 22, 2017 by Jerome Cockerham regarding 704 W. Melvina Street. Paragraph 6 of the Transfer asks that the property be transferred to Jerome Cockerham under Wis. Stat. §867.03. Paragraph 7 of the Transfer by Affidavit states that [Jerome Cockerham] "assume(s) a duty to apply the property transferred for the payment of obligations according to priorities…" A copy of the Transfer by Affidavit is attached hereto as Exhibit L.

15. A Transfer by Affidavit is allowed under Wis. Stat. §867.03. Wis. Stat. 867.03(2)(g) states that the person accepting a decedent's property "assumes a duty to apply the property transferred for the payment of obligations according to priorities…". No contact has been made with, nor have any payments been made to HUD since the filing of the above-mentioned Affidavit to discuss the obligations to HUD.

16. An Application for the Termination of Decedent's Interest and Confirmation of Applicant's Interest in Property regarding Elzie Cockerham was filed with the Milwaukee County Register of Deeds on September 8, 2017. The Application for Termination of Decedent's Interest and Confirmation of Applicant's Interest in Property claimed allowance under Wis. Stat. §867.045. Wis. Stat. §867.045(1) states that "Upon the death of any person having an interest as a joint tenant or life tenant in any real property had a vendor's or

mortgagee's interest, or had a life estate". Jerome Cockerham is the son of Elzie Cockerham and does not have an interest in the property other than as a potential heir. His interest, if any, does not rise above the secured interest of HUD. A copy of the Application is attached hereto as Exhibit M.

17. A Transfer [of the Property] by Affidavit In the Matter of Daisy Cockerham was filed with the Milwaukee County Register of Deeds on September 8, 2017 by Jerome Cockerham regarding 704 W. Melvina Street. Paragraph 6 of the Transfer asks that the property be transferred to Jerome Cockerham under Wis. Stat. §867.03. Paragraph 7 of the Transfer by Affidavit states that [Jerome Cockerham] "assume(s) a duty to apply the property transferred for the payment of obligations according to priorities…". A copy of the Application is attached hereto as Exhibit N.

18. The Transfer by Affidavit is allowed under Wis. Stat. §867.03. Wis. Stat. 867.03(2)(g) states that the person accepting a decedent's property "assumes a duty to apply the property transferred for the payment of obligations according to priorities…". No contact has been made with HUD since the filing of the above-mentioned Affidavit to discuss the obligations to HUD.

19. Under the terms of the above notes and mortgages, default occurred on the date of death of Daisy Cockerham. Consistent with said terms and default, full and immediate payment is due and demanded.

20. The Estate of Elzie Cockerham owes the Plaintiff under the provisions of the notes, and mortgages a balance of $55,328.20 as of September 21, 2018. A Statement of Account is attached hereto as Exhibit O.

21. The Estate of Daisy Cockerham owes the Plaintiff under the provisions of the

notes, and mortgages a balance of $55,328.20 as of September 21, 2018.   A Statement of Account is attached hereto as Exhibit O.

22.     Plaintiff has made the following payments as permitted by the provisions of said mortgages, which have become a part of the mortgage indebtedness.

Service fee (monthly fee)                    $7,380.00
MIP (insurance)                              $4,920.14

23.     The other defendants purport to have interest in the mortgaged premises but any such interests are junior and subordinate to the interest of the plaintiff.

WHEREFORE, plaintiff prays that an accounting be taken under the direction of this Court of what is due for principal and interest on the notes and mortgages and that a decree be entered as follows:

(a)     That the defendants pay to plaintiff the principal of $29,823.83 and interest of $25,504.37, together with interest from September 21, 2018 at the rate of $7.63 per day computed as provided in the notes and mortgages up to the date on which the decree is entered, plus interest thereafter according to law, costs, disbursements, and expenses;

(b)     Or in default of such payment, that all legal right, title, and interest that defendants have in the property described in said mortgages be sold at public sale in accordance with 28 U.S.C. §§2001-2003, inclusive, and that the amounts due to plaintiff be paid out of the proceeds of the sale pursuant to the lien priority of its mortgages;

(c)     That the defendants and all persons claiming or who may claim by, from, or under it be absolutely barred and foreclosed from all rights and equity of redemption in the property,

(d)     That if the proceeds of the sale exceed the sum of money to be paid to plaintiff, any such excess be deposited with the Clerk of this Court subject to further orders of the Court,

(e)     For such other and further relief as is just.

Dated at Milwaukee, Wisconsin this 6th day of June, 2019.

MATTHEW D. KRUEGER
United States Attorney

By      *s/Carter B. Stewart*

CARTER B. STEWART
Assistant United States Attorney
Illinois State Bar No. 6300958
Office of the United States Attorney
Federal Building, Room 530
517 East Wisconsin Avenue
Milwaukee, Wisconsin   53202
Telephone:   (414) 297-1700
Fax: 414-297-4394
carter.stewart@usdoj.gov



# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)



FHA Case No. **581-2061047-952/255**
**2061047**

**APRIL 03** , 1998

**704 WEST MELVINA STREET, MILWAUKEE, WISCONSIN 53206**
[Property Address]

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Lender" means
**NORWEST MORTGAGE, INC., A CALIFORNIA CORPORATION**

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **APRIL 03, 1998** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **AUGUST 29** , 2076 . Interest will be charged on unpaid principal at the rate of **SIX AND 590/1000** percent ( **6.5900** %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month. Solely for the purpose of calculating interest, a payment received by Lender within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A) **Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.
(B) **Place**
Payment shall be made at **NORWEST MORTGAGE, INC.,**
**P.O. BOX 5137,,**
**DES MOINES, IA 50306-5137** , or any such other place as Lender
may designate in writing by notice to Borrower.
(C) **Limitation of Liability**
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES
(A) **Change Date**
The interest rate may change on the first day of **JULY, 1998** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.
(B) **The Index**
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.
(C) **Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of **ONE AND 200/1000** percentage points ( **1.20000** %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.
(D) **Limits on Interest Rate Changes**
☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
☒ The interest rate will never increase above **SIXTEEN AND 590/1000** percent ( **16.59000** %).
(E) **Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

*Exhibit A*

60XA : 11/96

Page 1 of 3

INITIAL HERE ℰ. C. Ɋℋℭ.

Case 2:19-cv-00845 Filed 06/06/19 Page 1 of 4 Document 1-1

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

<u>First</u>, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

<u>Second</u>, to that portion of the principal balance representing aggregate payments for servicing fees;

<u>Third</u>, to that portion of the principal balance representing accrued interest due under the Note; and

<u>Fourth</u>, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

Case 2:19-cv-00845  Filed 06/06/19  Page 2 of 4  Document 1-1

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

## 12. SHARED APPRECIATION

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

(SIGN HERE X) _Elzie Cockerham_ APR 0 6 1998 (Seal)
ELZIE COCKERHAM -Borrower

(SIGN HERE X) _Daisy M. Cockerham_ APR 0 6 1998 (Seal)
DAISY M. COCKERHAM -Borrower

All rights, title and interest of the undersigned to the within credit instrument is hereby assigned to the secretary of Housing and Urban Development of Washington D.C., his/her successors and assigns.
Financial Freedom Acquisition LLC

_____Vice President

This is to certify that this is a true and exact copy of the original.

_____ _____
Signature           date

Case 2:19-cv-00845 Filed 06/06/19 Page 3 of 4 Document 1-1

WITHOUT RECOURSE
PAY TO THE ORDER OF

WENDOVER FINANCIAL SERVICES CORP.

NORWEST MORTGAGE, INC.
A CALIFORNIA CORPORATION


BY: *Michelle Ferrel*
MICHELLE FERREL-ASSISTANT SECRETARY

Without Recourse, Pay To The Order Of:

WENDOVER FINANCIAL SERVICES CORPORATION
By: *Carol P. Alexander*

# ADJUSTABLE RATE HOME
# EQUITY CONVERSION
# MORTGAGE

**7524714**

REGISTER'S OFFICE } SS
Milwaukee County, WI }
RECORDED AT_____ -12 05 PM

APR 2 9 1998
REEL 4297 IMAGE 1013 to 1020
Walter R Berry REGISTER
OF DEEDS

RECORD AND RETURN TO:
NORWEST MORTGAGE, INC.
2091 WEST FLORIDA AVENUE, SUITE 120
HEMET, CALIFORNIA 92545

Parcel ID Number:

------------------- [Space Above This Line For Recording Data] -------------------

State of Wisconsin

FHA Case No. **581-2061047-952/255**
**2061047**

THIS MORTGAGE ("Security Instrument") is given on **APRIL 03, 1998** . The mortgagor is
**ELZIE COCKERHAM AND DAISY M. COCKERHAM , HIS WIFE**

7524714

*RECORD* 24.00

whose address is **704 WEST MELVINA STREET,**
**MILWAUKEE, WISCONSIN 53206** ("Borrower").
This Security Instrument is given to
**NORWEST MORTGAGE, INC., A CALIFORNIA CORPORATION**

, which is
organized and existing under the laws of **THE STATE OF CALIFORNIA** , and whose address is
**1595 SPRUCE STREET, RIVERSIDE, CALIFORNIA 92507**
("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**SIXTY SEVEN THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**
**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**
(U.S. $ **67,500.00** ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full
debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
**AUGUST 29** , 2076 . For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with
power of sale, the following described property located in **MILWAUKEE** County, Wisconsin:

INITIAL HERE *EC* ENTIRE HERE + *D.m.C.*

XD36 : 01/97

Page 1 of 8

Case 2:19-cv-00845   Filed 06/06/19   Page 1 of 8   Document 1-2

**Exhibit B**

LOT 18 , IN BLOCK 3, IN WASHINGTON PARK NO. 2, IN THE NORTH WEST 1/4 OF SECTION 8, TOWNSHIP 7 NORTH, RANGE 22 EAST, SAID LAND BEING IN THE CITY OF MILWAUKEE, COUNTY OF MILWAUKEE, STATE OF WISCONSIN.

which has the address of  704 WEST MELVINA STREET

[Street]

**MILWAUKEE** , **WISCONSIN**     53206     ("Property Address");
[City]                  [State]         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

00XA : 11/96     Page 2 of 8

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 11/96                                    Page 3 of 8

Case 2:19-cv-00845   Filed 06/06/19   Page 3 of 8   Document 1-2

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall

04XA : 11/96                    Page 4 of 8

be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

05XA : 11/96                           Page 5 of 8

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS, Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums

secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of 6.5900 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **JULY, 1998** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 590/1000** percent ( 16.59000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Accelerated Redemption Periods.** If (a) the Property is 20 acres or less in size, (b) Lender in an action to foreclose this Security Instrument waives all right to a judgment for deficiency and (c) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be 6 months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (b) and (c) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be 3 months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be 2 months from the date the judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "reasonable attorneys' fees" shall mean only those attorneys' fees allowed by that Chapter.

**26. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees and other charges, shall be obligatory.

XD38 : 05/97                                    Page 7 of 8

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider     ☐ Shared Appreciation Rider     ☐ Planned Unit Development Rider
☐ Other (Specify)

    BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    *Elzie Cockerham*      (Seal)
                         **ELZIE COCKERHAM**          -Borrower

_____    *Daisy M. Cockerham*      (Seal)
                         **DAISY M. COCKERHAM**         -Borrower

_____ [Space Below This Line For Acknowledgment] _____

STATE OF   WISCONSIN  ,   MILWAUKEE   **COUNTY SS:**

    The foregoing instrument was acknowledged before me this    **APRIL 03, 1998**         , by
**ELZIE COCKERHAM AND DAISY M. COCKERHAM**

My commission expires: 5-6-01      _____
                               Notary Public     Kim M. Zylke

     (Seal)

This instrument was drafted by:    *Cathy L. Lilly*
**NORWEST MORTGAGE, INC.**

XD39 : 05/97                          Page 8 of 8

**7524715**

PREPARED BY AND WHEN RECORDED,
MAIL TO:

NORWEST MORTGAGE, INC.
2091 WEST FLORIDA AVE. #120
HEMET, CA. 92545

Order No. 171771
Escrow No. 171771
Loan No. 2061047

REGISTER'S OFFICE } SS
Milwaukee County, WI }
RECORDED AT _____ -12 05 PM

APR 29 1998
REEL *4297* IMAGE *1021*
_Walter R. Barezy_ REGISTER
OF DEEDS

──── SPACE ABOVE THIS LINE FOR RECORDER'S USE ────

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
WENDOVER FINANCIAL SERVICES CORPORATION / ITS SUCCESSORS AND/OR ASSIGNS
all beneficial interest under that certain Deed of Trust dated       April 3, 1998                    , executed by

ELZIE COCKERHAM AND DAISY M. COCKERHAM, his Wife                   , Trustor,

LOT 18 , IN BLOCK 3, IN WASHINGTON PARK NO. 2, IN THE NORTH WEST 1/4
OF SECTION 8, TOWNSHIP 7 NORTH, RANGE 22 EAST, SAID LAND BEING IN THE        7524715
CITY OF MILWAUKEE, COUNTY OF MILWAUKEE, STATE OF WISCONSIN.

                                                                      RECORD      10.00
to    NORWEST MORTGAGE INC., A CALIFORNIA CORPORATION **7524714**   , Trustee,
and recorded    CONCURRENTLY          , as Document No.   HEREWTIH  **7524714**
in Book                    page
of Official Records in the Office of the County Recorder of    Milwaukee            County,

TOGETHER with the note or notes there in described or referred to, the money due and to become due thereon with interest,
and all rights accrued or to accrue under said Deed of Trust.

Dated:   April 3, 1998

STATE OF CALIFORNIA          )
COUNTY OF                    )ss.
RIVERSIDE                    )
On   4-3-98                        before me,
DIANNE TERRY
a Notary Public in and for said County and State, personally appeared
LAURIE CARROLL

personally known to me (or proved to me on the basis of satis-
factory evidence) to be the person(s) whose name(s) is/are sub-
scribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which
the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Seal) _~signature~_
Notary Public in and for said County and State,
DIANNE TERRY

NORWEST MORTGAGE, INC.

By _~signature~_
LAURIE CARROLL—ASSISTANT SECRETARY

By_____

DIANNE TERRY
COMM. # 1173196
NOTARY PUBLIC-CALIFORNIA
RIVERSI
COMM. EXP

Doc Yr : 2009 Doc# 07524715 Page # 1 of 1

**Exhibit C**

## ASSIGNMENT OF MORTGAGE
## WISCONSIN

8119104

REGISTER'S OFFICE | SS
Milwaukee County,WI|
RECORDED AT 11:13 AM
08-17-2001

WALTER R. BARCZAK
REGISTER OF DEEDS

AMOUNT 12.00

Assignment-Interv.-Recorded

REEL 5139  IMAGE 1329

COUNTY  *MILWAUKEE*
POOL NO.
LOAN NO. *195610 [6000029079 FNMA]*

PREPARED BY SECURITY
CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
*Security Connections, Inc.*
*620 S. Woodruff Ave.*
*Idaho Falls, ID 83401*
PIN #

FOR AND IN CONSIDERATION OF One Dollar and other consideration to it paid
*WENDOVER FINANCIAL SERVICES CORPORATION, A NORTH CAROLINA CORPORATION*

located at *725 NORTH REGIONAL ROAD,*
*GREENSBORO, NC 27409*
does hereby grant, bargain, sell assign, transfer, convey and setover unto
*LEHMAN CAPITAL, A DIVISION OF LEHMAN BROTHERS HOLDINGS, INC., A DELAWARE CORPORATION*

located at *C/O 353 SACRAMENTO STREET, SUITE 420, SAN FRANCISCO, CA 94111*

a certain Indenture of Mortgage, executed by *ELZIE COCKERHAM AND DAISY M.*
*COCKERHAM, HIS WIFE*

and dated the *3rd* day of *APRIL* , A.D. *1998* ,
to *NORWEST MORTGAGE, INC.*
on certain lands in the County of *MILWAUKEE*
and State of Wisconsin, together with the Note therein referred to
and all the rights, title and interest conveyed by said Mortgage, in and to
said lands, which Mortgage was duly recorded in the office of the Register
of Deeds in and for the County of *MILWAUKEE* in the State
of Wisconsin, on the *29th* day of *APRIL* , A.D. *1998*
in Volume *4297* of records, on Page *1013* ,
Document no. *7524714*
*LOT 18, IN BLOCK 3, IN WASHINGTON PARK NO. 2, IN THE NORTH WEST 1/4 OF SECTION 8,*
*TOWNSHIP 7 NORTH, RANGE 22 EAST, SAID LAND BEING IN THE CITY OF MILWAUKEE, COUNTY OF*
*MILWAUKEE, STATE OF WISCONSIN.*

Loan No.
*C=S.1005.0036*
*P=S.001.9575*
(NMRI.WI)

*J=WN888.S.09575*
PAGE 1 OF 2

Z

**Exhibit D**

LOAN NO. 195610 [6000029079 FNMA]
TO HAVE and TO HOLD the said Note and Mortgage, and the debt thereby
secured, and all rights, title and interest conveyed by said Mortgage, in
and to the lands therein described, to the said LEHMAN CAPITAL, A DIVISION
OF LEHMAN BROTHERS HOLDINGS, INC.

its successors and assigns forever, subject only to the terms and
conditions of the above described Mortgage.

IN WITNESS, the said WENDOVER FINANCIAL SERVICES CORPORATION

has caused these presents to be signed by RUANA RANSOM
its ASSISTANT SECRETARY                                          and
countersigned by _____        its
_____, at WENDOVER FINANCIAL
SERVICES CORPORATION
this    16th    day of    JULY              , A.D.  2001      but effective
OCTOBER 31, 2000       .

                    WENDOVER FINANCIAL SERVICES CORPORATION
                    FORMERLY KNOWN AS WENDOVER FUNDING, INC.

                    By_____
WITNESS VAL AESCHBACHER        RUANA RANSOM
                               ASSISTANT SECRETARY


                               By_____
WITNESS JANE CLINGER

STATE OF IDAHO                        )
                                      ) SS
COUNTY OF BINGHAM                     )

On JULY 16, 2001        , before me, JOAN COOK
_____ personally appeared RUANA RANSOM
_____ and _____ personally known to (or
proved to me on the basis of satisfactory evidence) to be the person(s)
who executed the within instrument as ASSISTANT SECRETARY
_____ and
_____ on behalf of corporation
therein named and acknowledged to me that the corporation executed it.
                               THIS INSTRUMENT WAS
                               DRAFTED BY

_____
Notary public in and for said County and State
JOAN COOK  (COMMISSION EXP. 02-16-07)        KARLEEN MAUGHAN

                JOAN COOK
                NOTARY PUBLIC
                STATE OF IDAHO


(NMRI.WI.2)                    Page 2 of 2
C=S.1005.0036
P=S.001.9575           J=WN888.B.09575

Case 2:19-cv-00845   Filed 06/06/19   Page 2 of 2   Document 1-4

# ASSIGNMENT OF MORTGAGE

# WISCONSIN

DOC. #
08866703

REGISTER'S OFFICE | SS
Milwaukee County, WI|

RECORDED AT 09:31AM

09/17/2004

JOHN LA FAVE
REGISTER OF DEEDS

AMOUNT:     13.00

COUNTY *MILWAUKEE*
POOL NO.
LOAN NO. *(195610 ) FHA Case #*
*5812061047 [6000029079]*

|||||||||||||||||||
*Assignment-Interv.-Recorded*
PREPARED BY SECURITY
CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
*SECURITY CONNECTIONS INC.*
*1935 INTERNATIONAL WAY*
*IDAHO FALLS, ID 83402*
*PH:(208)528-9895*
PIN #

FOR AND IN CONSIDERATION OF One Dollar and other consideration to it paid
*FINANCIAL FREEDOM SENIOR FUNDING CORPORATION ACTING AS ATTORNEY-IN-FACT FOR LEHMAN*
*CAPITAL, A DIVISION OF LEHMAN BROTHERS HOLDINGS, INC., A DELAWARE CORPORATION*

located at *C/O 353 SACRAMENTO STREET, SUITE 900, SAN FRANCISCO, CA 94111*
does hereby grant, bargain, sell assign, transfer, convey and setover unto
*FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A DELAWARE CORPORATION*

located at *353 SACRAMENTO STREET, SUITE 900, SAN FRANCISCO, CA 94111*

a certain Indenture of Mortgage, executed by *ELZIE COCKERHAM AND DAISY M.*
*COCKERHAM, HIS WIFE*

and dated the *3rd*     day of *APRIL*             , A.D. *1998*           ,
to *NORWEST MORTGAGE, INC.*
                    on certain lands in the County of *MILWAUKEE*
          and State of Wisconsin, together with the Note therein referred to
and all the rights, title and interest conveyed by said Mortgage, in and to
said lands, which Mortgage was duly recorded in the office of the Register
of Deeds in and for the County of *MILWAUKEE*              in the State
of Wisconsin, on the *29th*      day of *APRIL*            , A.D. *1998*
in Volume *4297*               of records, on Page *1013*
Document no. *7524714*        .
*LOT 18, IN BLOCK 3, IN WASHINGTON PARK NO. 2, IN THE NORTH WEST 1/4 OF SECTION 8,*
*TOWNSHIP 7 NORTH, RANGE 22 EAST, SAID LAND BEING IN THE CITY OF MILWAUKEE, COUNTY OF*
*MILWAUKEE, STATE OF WISCONSIN.*

||||||||||||||||
Loan No.
*C=S.671.0010*
*P=S.001.02071*
(NMRI.WI)

*J=FF8070104AIA.S.03368*
PAGE 1 OF 2

LOAN NO. *(195610 )* FHA Case # 5812061047 [6000029079]
TO HAVE and TO HOLD the said Note and Mortgage, and the debt thereby
secured, and all rights, title and interest conveyed by said Mortgage, in
and to the lands therein described, to the said *FINANCIAL FREEDOM SENIOR*
*FUNDING CORPORATION*

_____ its successors and assigns forever, subject
only to the terms and conditions of the above described Mortgage.
IN WITNESS, the said *FINANCIAL FREEDOM SENIOR FUNDING CORPORATION ACTING AS*
*ATTORNEY-IN-FACT FOR LEHMAN CAPITAL, A DIVISION OF LEHMAN BROTHERS HOLDINGS, INC.*

has caused these presents to be signed by *M.L. MARCUM*
its *ASSISTANT VICE PRESIDENT* and
countersigned by *SANDY BROUGH* its *ASSISTANT VICE*
*PRESIDENT* , at *FINANCIAL FREEDOM SENIOR FUNDING CORPORATION*
*ACTING AS ATTORNEY-IN-FACT FOR LEHMAN CAPITAL, A DIVISION OF LEHMAN BROTHERS*
*HOLDINGS, INC.*
this *5th* day of *AUGUST* , A.D. *2004* but effective
*MAY 5, 2004*

*FINANCIAL FREEDOM SENIOR FUNDING CORPORATION ACTING AS ATTORNEY-IN-FACT FOR LEHMAN*
*CAPITAL, A DIVISION OF LEHMAN BROTHERS HOLDINGS, INC.*

WITNESS *MARY ENOS*

By _____
*M.L. MARCUM*
*ASSISTANT VICE PRESIDENT*

WITNESS *BRITTNEY GRIFFIN*

By _____
*SANDY BROUGH*
*ASSISTANT VICE PRESIDENT*

STATE OF *IDAHO* )
) SS
COUNTY OF *BONNEVILLE* )

On *AUGUST 5, 2004* , before me, *CARLA TENEYCK*
_____ personally appeared *M.L. MARCUM*
_____ and *SANDY BROUGH* personally known to (or
proved to me on the basis of satisfactory evidence) to be the person(s)
who executed the within instrument as *ASSISTANT VICE PRESIDENT*
_____ and *ASSISTANT VICE PRESIDENT*
on behalf of corporation
therein named and acknowledged to me that the corporation executed it.

THIS INSTRUMENT WAS
DRAFTED BY

Notary public in and for said County and State
*CARLA TENEYCK (COMMISSION EXP. 09-02-09)*

*KARLEEN MAUGHAN*

CARLA TENEYCK
NOTARY PUBLIC
STATE OF IDAHO

(NMRI.WI.2)                          Page 2 of 2
C=S.671.0010
P=S.001.02071          *J=FF8070104AIA.S.03368*

RECORDING REQUESTED BY:
Financial Freedom Acquisition LLC
WHEN RECORDED RETURN TO
First American Document Solutions
450 E Boundary St
Chapin, SC 29036
Attn Lien Release

PREPARED BY Karin Whitlock
Address 7700 W Parmer Lane, Bldg D
Austin, TX 78729
Telephone Number (512) 918-7047

7714703

FHA Loan Number: 581-2061047



DOC.# 09766481

REGISTER'S OFFICE | SS
Milwaukee County, WI|

RECORDED 07/21/2009 09:13AM

JOHN LA FAVE
REGISTER OF DEEDS
AMOUNT: 13.00
FEE EXEMPT 77.25 #: 0

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE
### [FFSFC TO FFA]

FOR VALUE RECEIVED, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, a Delaware corporation ("**FFSFC**") does hereby grant, sell, assign, transfer and convey, unto FINANCIAL FREEDOM ACQUISITION LLC, a Delaware limited liability company, all of FFSFC's right, title and interest in, to and under that certain MORTGAGE dated APRIL 3, 1998, and executed by ELZIE COCKERHAM AND DAISY M. COCKERHAM, HIS WIFE, to and in favor of NORWEST MORTGAGE, INC., and recorded on APRIL 29, 1998, in MILWAUKEE County, State of WISCONSIN, as DOCUMENT NO 7524714 IN VOLUME 4297 PAGE 1013, (the "MORTGAGE"), which encumbers property described on **Exhibit A**, attached hereto and incorporated herein by this reference.

Property address 704 WEST MELVINA STREET, MILWAUKEE, WISCONSIN 53206

TOGETHER WITH the note(s) described or referred to in the MORTGAGE, the money due or to become due thereon with interest, and all rights accrued or to accrue under said MORTGAGE

**THE FOREGOING ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY FFSFC**, except that FFSFC hereby warrants that (a) no act or omission of FFA has impaired the validity and priority of the said security instruments, (b) the security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the Assignee hereunder, (c) the sum of $67,500 00 together with the interest from the 3RD day of APRIL, 1998, at the rate of 6 5900%, computed as provided in the credit instrument, is actually due and owing under the said credit instrument and (d) FFA has a good right to assign the said security and credit instruments.

IN WITNESS WHEREOF, the undersigned have executed this Corporation Assignment of MORTGAGE on June 9, 2009

FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, a Delaware corporation

By: _____
Name V LYN NILES
Title Attorney-in-Fact

STATE OF TEXAS
COUNTY OF WILLIAMSON

On June 24 2009 before me, KASSONDRA LYNETTE JOHNSON, a notary public in and for WILLIAMSON County, in the State of TEXAS, personally appeared V LYN NILES, attorney-in-fact for FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, C/O 7700 W PARMER LANE BLDG D, AUSTIN, TX 78729, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that She executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted executed the instrument

WITNESS my hand and official seal

Signature _____

KASSONDRA LYNETTE JOHNSON
Notary Public, State of Texas
My Commission Expires
December 06, 2012

**Exhibit F**

**LOAN POLICY**
**SCHEDULE A CONTINUED**

Lot 18, in Block 3, in Washington Park No. 2, in the North West 1/4 of Section 8, Township 7 North, Range 22 East, said land being in the City of Milwaukee, County of Milwaukee, State of Wisconsin.

SCHEDULE A
POLICY NO. 135-02-383557

*3*

*Assignment*
*of*
*Mortgage*
Document Title



# DOC.# 09806330

REGISTER'S OFFICE | SS
Milwaukee County, WI|

RECORDED   10/21/2009  11:16AM

JOHN LA FAVE
REGISTER OF DEEDS
AMOUNT:          15.00
FEE EXEMPT 77.25 #:  0

Recording Area

Name and Return Address

Financial Freedom Acquistion LLC
2900 Esperanza Crossing
Austin, TX  78758

Parcel Identification Number (PIN)

This information must be completed by submitter: document title, name & return address, and PIN (if required). Other information such as the granting clause, legal description, etc., may be placed on the first page of the document or may be placed on additional pages of the document. Note· Use of this cover page adds one page to your document and $2.00 to the recording fee. Wisconsin Statutes, 59.43(2m)
WRDA HB Rev 1/8/2004

**Exhibit G**

RECORDING REQUESTED BY:
Financial Freedom Acquisition LLC

AND WHEN RECORDED MAIL TO:
Financial Freedom Acquisition LLC
2900 Esperanza Crossing
Austin, TX 78758
PREPARED BY Karin Whitlock
Telephone Number (512) 918-7047

FHA Loan Number: 581-2061047

Space above this line for recorder's use

# CORPORATION ASSIGNMENT OF MORTGAGE
### [FFA TO FHA]

For value received, FINANCIAL FREEDOM ACQUISITION LLC, a Delaware limited liability company ("**FFA**"), whose address is 1 BANTING, IRVINE, CA 92618, does hereby grant, sell, assign, transfer and convey, unto the SECRETARY OF HOUSING AND URBAN DEVELOPMENT WASHINGTON D C ("**Assignee**") all of FFA's right, title and interest in, to and under the MORTGAGE dated APRIL 3, 1998, and executed by ELZIE COCKERHAM AND DAISY M COCKERHAM, HIS WIFE, to and in favor of NORWEST MORTGAGE, INC , and recorded on APRIL 29, 1998, in MILWAUKEE County, State of WISCONSIN, as DOCUMENT NO 7524714 IN VOLUME 4297 PAGE 1013, (the "MORTGAGE"), which encumbers property described on **Exhibit A**, attached hereto and incorporated herein by this reference

Property address 704 WEST MELVINA STREET, MILWAUKEE, WISCONSIN 53206
TOGETHER WITH the note(s) described or referred to in the MORTGAGE, the money due or to become due thereon with interest, and all rights accrued or to accrue under said MORTGAGE

**THE FOREGOING ASSIGNMENT IS MADE WITHOUT RECOURSE OR WARRANTY BY FFA**, except that FFA hereby warrants that (a) no act or omission of FFA has impaired the validity and priority of the said security instruments, (b) the security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the Assignee hereunder, (c) the sum of $67,500 00 together with the interest from the 3RD day of APRIL, 1998, at the rate of 6 5900%, computed as provided in the credit instrument, is actually due and owing under the said credit instrument and (d) FFA has a good right to assign the said security and credit instruments

IN WITNESS WHEREOF, the undersigned has executed this Corporation Assignment of MORTGAGE on October 8, 2009

FINANCIAL FREEDOM ACQUISITION LLC, a Delaware limited liability company

By
Name    CAROL NORTON
Title    FIRST VICE PRESIDENT

STATE OF TEXAS
COUNTY OF TRAVIS

On October 8, 2009, before me, KASSONDRA LYNETTE JOHNSON, a notary public in and for TRAVIS County, in the State of TEXAS, personally appeared CAROL NORTON, FIRST VICE PRESIDENT for FINANCIAL FREEDOM ACQUISITION LLC, C/O 2900 ESPERANZA CROSSING, AUSTIN, TX 78758, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that She executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted executed the instrument

WITNESS my hand and official seal

Signature


KASSONDRA LYNETTE JOHNSON
Notary Public, State of Texas
My Commission Expires
December 08, 2012

LOAN POLICY
SCHEDULE A CONTINUED

Lot 18, in Block 3, in Washington Park No. 2, in the North West 1/4 of Section 8, Township 7 North, Range 22 East, said land being in the City of Milwaukee, County of Milwaukee, State of Wisconsin.

SCHEDULE A
POLICY NO. 135-02-383557

# ADJUSTABLE RATE SECOND NOTE
## (HOME EQUITY CONVERSION)

FHA Case No. 581-2061047-952/255
2061047

APRIL 03          , 1998

**704 WEST MELVINA STREET, MILWAUKEE, WISCONSIN 53206**
[Property Address]

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated      **APRIL 03, 1998**                  ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on  **AUGUST 29**       ,   **2076** . Interest will be charged on unpaid principal at the rate of      **SIX AND 590/1000**                 percent (        6.5900%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month. Solely for the purpose of calculating interest, a payment received by Lender within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or "Second Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

## 4. MANNER OF PAYMENT

### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place
Payment shall be made at the Office of the Housing-FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 7th Street, S.W., Washington, DC 20410, or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

## 5. INTEREST RATE CHANGES

### (A) Change Date
The interest rate may change on the first day of      **JULY, 1998**                  , and on  ☐  that day of each succeeding year   ☒   the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of   **ONE AND 200/1000** percentage points (        1.20000%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes
☐  The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
☒ The interest rate will never increase above      **SIXTEEN AND 590/1000**    percent (       16.59000 %).

### (E) Notice of Changes
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

# Exhibit H

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or at any other address designated by the Secretary.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO FIRST NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

**(B) Relationship of Secretary Payments to First Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) The First Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

Case 2:19-cv-00845 Filed 06/06/19 Page 2 of 3 Document 1-8

**(C) Notice of Interest Rate Adjustments**

Borrower agrees that as long as the holder of the First Note continues to make Loan Advances, any notice of interest rate adjustment given to Borrower under Paragraph 5(E) of the First Note shall also be considered to be notice to Borrower under Paragraph 5(E) of this Note, so that the same interest rate shall apply for the First Note and this Note.

**12. SHARED APPRECIATION**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

SIGN HERE X _Elzie Cockerham_      APR 0 6 1998
                                                     (Seal)
**ELZIE COCKERHAM**                    -Borrower

SIGN HERE X _Daisy M. Cockerham_      APR 0 6 1998
                                                       (Seal)
**DAISY M. COCKERHAM**                   -Borrower

# ADJUSTABLE RATE HOME
## EQUITY CONVERSION
## SECOND MORTGAGE

**7524716**

REGISTER'S OFFICE } SS
Milwaukee County, WI }
RECORDED AT _____ -12 05 PM

APR 2 9 1998
REEL 4297 IMAGE 1022 to 1029
Walter R. George REGISTER
OF DEEDS

RECORD AND RETURN TO:
NORWEST MORTGAGE, INC.
2091 WEST FLORIDA AVENUE, SUITE 120
HEMET, CALIFORNIA 92545

Parcel ID Number:

7524716

RECORD     24.00

----------------------- [Space Above This Line For Recording Data] -----------------------

**State of Wisconsin**                    FHA Case No. 581-2061047-952/255
                                          2061047

    THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on
**APRIL 03, 1998**    . The mortgagor is
**ELZIE COCKERHAM AND DAISY M. COCKERHAM , HIS WIFE**

whose address is   **704 WEST MELVINA STREET,**
**MILWAUKEE, WISCONSIN 53206**    ("Borrower"). This Security Instrument
is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W.,
Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender
is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement
dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by
Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
SIXTY SEVEN THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $   67,500.00   ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note.
The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
**AUGUST 29**   , 2076 . For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with
power of sale, the following described property located in   **MILWAUKEE**    County, Wisconsin:

XD40 : 01/97                    Page 1 of 8                    INITIAL HERE EC DmC

Case 2:19-cv-00845   Filed 06/06/19   Page 1 of 8   Document 1-9

**Exhibit I**

LOT 18 , IN BLOCK 3, IN WASHINGTON PARK NO. 2, IN THE NORTH WEST 1/4 OF SECTION 8, TOWNSHIP 7 NORTH, RANGE 22 EAST, SAID LAND BEING IN THE CITY OF MILWAUKEE, COUNTY OF MILWAUKEE, STATE OF WISCONSIN.

which has the address of   **704 WEST MELVINA STREET**

[Street]

**MILWAUKEE** , **WISCONSIN.** 53206 ("Property Address");

[City]  [State]  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS, Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's

10XA : 09/97 Page 2 of 8

Case 2:19-cv-00845   Filed 06/06/19   Page 2 of 8   Document 1-9

security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

13XA : 11/96

Page 3 of 8

Case 2:19-cv-00845   Filed 06/06/19   Page 3 of 8   Document 1-9

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

(b) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

14XA : 11/96                                     Page 4 of 8                              *9C  D.m.C.,*

**12. Lien Status.**
(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.
(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.
(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**
(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.
(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:
(i) The First Security Instrument is assigned to the Secretary; or
(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.
If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.
(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:
(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or
(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.
(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

15XA : 11/96

Page 5 of 8

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums**

XD41 : 01/97                                    Page 6 of 8

secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22. Adjustable Rate Feature.** Under the Second Note, the initial stated interest rate of 6.5900 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **JULY, 1998** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 590/1000** percent ( 16.59000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Accelerated Redemption Periods.** If (a) the Property is 20 acres or less in size, (b) Lender in an action to foreclose this Security Instrument waives all right to a judgment for deficiency and (c) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be 6 months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (b) and (c) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be 3 months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be 2 months from the date the judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "reasonable attorneys' fees" shall mean only those attorneys' fees allowed by that Chapter.

**26. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees and other charges, shall be obligatory.

XD42 : 05/97                                        Page 7 of 8

Doc Yr : 2009 Doc# 07524716 Page # 7 of 8

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider     ☐ Shared Appreciation Rider     ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    *SIGN HERE* x *Elzie Cockerham* (Seal)
          **ELZIE COCKERHAM**          -Borrower

_____    *Daisy M. Cockerham* (Seal)
          **DAISY M. COCKERHAM**          -Borrower

―――――――――― [Space Below This Line For Acknowledgment] ――――――――――

STATE OF WISCONSIN , MILWAUKEE     COUNTY SS:

The foregoing instrument was acknowledged before me this    **APRIL 03, 1998**      , by
**ELZIE COCKERHAM AND DAISY M. COCKERHAM**

My commission expires: 5-6-01      _____
                          Notary Public   *Kim M. Zylke*
        (Seal)

This instrument was drafted by:
**NORWEST MORTGAGE, INC.**    *Cathy L. Lilly*

XD43 : 05/97                         Page 8 of 8

INDEX RECORD FOR

# Elzie Cockerham

## Social Security Death Index

| | |
|---|---|
| Full Name: | Elzie Cockerham |
| Birth Date: | 11 Dec 1919 |
| Death Date: | 16 Apr 2005 |
| Last Residence: | Milwaukee, WI |
| Social Security Card Issued: | Unknown Code (PE) |
| Social Security Number: | ***-**-0454 |
| Views: | 1 |

### PUBLICATION INFO

| | |
|---|---|
| Publication Title: | Social Security Death Index (Text only collection) |
| Content Source: | Social Security Administration |
| Last Updated: | July 28, 2017 |
| Description: | The SSDI (Social Security Death Index) is a database of deceased individuals with social security numbers, and whose deaths were reported to the SSA. |

Copyright © 2019 Fold3 by Ancestry. All Rights Reserved.

INDEX RECORD FOR

# Daisy M Cockerham

Social Security Death Index

| | |
|---|---|
| Full Name: | Daisy M Cockerham |
| Birth Date: | 29 Aug 1926 |
| Death Date: | 12 Sep 2011 |
| Last Residence: | Milwaukee, WI |
| Social Security Card Issued: | Unknown Code (PE) |
| Social Security Number: | ***-**-8823 |
| Views: | 1 |

PUBLICATION INFO

| | |
|---|---|
| Publication Title: | Social Security Death Index (Text only collection) |
| Content Source: | Social Security Administration |
| Last Updated: | July 28, 2017 |
| Description: | The SSDI (Social Security Death Index) is a database of deceased individuals with social security numbers, and whose deaths were reported to the SSA. |

Copyright © 2019 Fold3 by Ancestry. All Rights Reserved.

**Exhibit K**

**3**

STATE OF WISCONSIN, _____MILWAUKEE_____ COUNTY

IN THE MATTER OF
ELZIE & DAISY Cockerham **Transfer by Affidavit**
Decedent **($50,000 and under)**

‖ 8 0 2 3 0 3 6 3 ‖
Tx:40154664

**DOC. # 10685547**
RECORDED:
06/22/2017 9:35 AM
JOHN LA FAVE
REGISTER OF DEEDS
MILWAUKEE COUNTY, WI
AMOUNT: 30.00
FEE EXEMPT #: 77.25 (11)

*Register of deeds recording area*
Name and return address
Jerome Cockerham
704 W. Melvina St
Milw. WI 53206

272 - 2538
*parcel identification number*

**Note: Use black ink only.**

**UNDER OATH, I STATE:**

1. The decedent, with date of birth __12/11/23__ and date of death __2005__ was domiciled in __Milwaukee__ County, State of __Wisconsin__, with a mailing address of __704 W Melvina St__

2. I am: ☑ an heir, having the following relationship to the decedent: __Elzie & Daisy Cockerham__
   ☐ the person who was guardian of the decedent at the time of the decedent's death.
   ☐ trustee of a revocable trust created by the decedent.

3. The total gross value of the decedent's property subject to administration in Wisconsin on the date of decedent's death was $ 18,000 (not to exceed $50,000).

4. The decedent:
   ☐ did ☑ did not      receive Medical Assistance/Medicaid.
   ☐ did ☑ did not      receive Family Care and/or Partnership benefits (through a Managed Care Organization – MCO/CMO).
   ☐ did ☑ did not      receive benefits from the Community Options Program (COP).
   ☐ did ☑ did not      receive benefits from the Wisconsin Chronic Disease Program.
   ☐ was ☑ was not      patient or inmate of a state or county hospital or institution, or responsible for another person owing an obligation to the state or county. If so, explain: _____
   ☐ The affiant lacks information to complete this section.

5. If the decedent was ever married, complete the following: (If more than one spouse, ☐ **see attached**.)
   Name of spouse (☑ living or ☐ deceased): __DAISY Cockerham__
   ☑ Married to decedent ☐ Divorced from decedent      at time of decedent's death.
   The spouse      ☐ did ☑ did not      receive benefits from the Community Options Program (COP).
   The spouse      ☐ did ☑ did not      receive benefits from the Wisconsin Chronic Disease Program.
   ☐ The affiant lacks information to complete this section.

PR-1831, 05/16 Transfer by Affidavit ($50,000 and under)                        §§711.03(10) and 867.03, Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.

**Exhibit L**

6. I ask that the following property be transferred to me under §867.03(1g), Wisconsin Statutes:

| **DESCRIPTION OF ASSETS TO BE TRANSFERRED**<br>(If real estate, list legal description and tax parcel number. If personal property<br>(including digital property as defined under §711.03(10), Wis. Stats.), specifically describe property<br>including name of financial institutions and account numbers, if any.) | **GROSS VALUE** |
|---|---|
| WAShington Park<br>NO 2 iN NW 1/4 SEC<br><br>8 - 7 - 22 BLock<br><br>3 lot 18 | $ 18,200.00 |

7. By accepting the decedent's property under this section, I assume a duty to apply the property transferred for the payment of obligations according to priorities established under §859.25, Wisconsin Statutes, and to distribute any balance to those persons designated in the appropriate governing instrument, as defined in §854.01, Wisconsin Statutes, or if there is no governing instrument, according to the rules of intestate succession under ch. 852, Wisconsin Statutes.

8. If a decedent or decedent's spouse has received any of the benefits that are listed on page 1 of this affidavit or if unknown, a duplicate affidavit must be sent by certified mail with return receipt requested to the Estate Recovery Program for the State of Wisconsin, Department of Health Services prior to submission of this affidavit for recording. The proof of prior mailed notice should accompany the affidavit for recording, with the delivery date on the mail receipt being at least 10 days prior.

State of _____ WISCONSIN _____

County of _____ MILWAUKEE _____

Subscribed and sworn to before me on _____ 10-10-2017 _____

Notary Public/Court Official

Name Printed or Typed: Dalyn Ward

My commission/term expires: _____ 03-24-2018 _____

*This document was drafted by:* _____ JEROME COCKERHAM _____
Print or Type Name

Signature — Jerome Cockerham

Name Printed or Typed — **Jerome Cockerham**

704 W Melvina St
Address
Milwaukee, WI, 53206

Register of Deeds Office viewed the certified mail receipt.

**ONLY** if this affidavit describes an interest in or lien on real estate, then a certified copy or duplicate original of this affidavit must be recorded with the register of deeds in each county in Wisconsin where the real estate is located.

This form shall not be modified. It may be supplemented with additional material.
Page 2 of 2

**TRANSFER BY AFFIDAVIT (§867.03, Wisconsin Statutes)**

(1c) DEFINITION. In this section, "guardian" has the meaning given in §54.01(10) or 880.01(3), 2003 statutes.

(1g) GENERALLY. When a decedent leaves property subject to administration in this state which does not exceed $50,000 in value, any heir of the decedent, trustee of a revocable trust created by the decedent or person who was guardian of the decedent at the time of the decedent's death may collect any money due the decedent, receive the property of the decedent and have any evidence of interest, obligation to or right of the decedent transferred to the affiant if the heir, trustee or guardian provides to the person owing the money, having custody of the property or acting as registrar or transfer agent of the evidences of interest, obligation to or right, or, if the property is an interest in or lien on real property, provides to the register of deeds preliminary to the recording required under sub. (2m), proof of prior mailed notice under sub. (1m) if applicable and an affidavit in duplicate showing all of the following:

(a) A description of and the value of the property to be transferred.

(b) The total value of the decedent's property subject to administration in this state at the date of decedent's death.

(c) Whether the decedent or the decedent's spouse ever received the family care benefit under §46.286, medical assistance under subch. IV of ch. 49, long-term community support services funded under §46.27(7) or aid under §§49.68, 49.683 or 49.685.

(1m) NOTICE OF AFFIDAVIT. (a) Whenever an heir, trustee or person who was guardian of the decedent at the time of the decedent's death intends to transfer a decedent's property by affidavit under sub. (1g) and the decedent or the decedent's spouse ever received the family care benefit under §46.286, medical assistance under subch. IV of ch. 49, long-term community support services funded under §46.27(7) or aid under §§49.68, 49.683 or 49.685, the heir, trustee or person who was guardian of the decedent at the time of the decedent's death shall give notice to the department of health services of his or her intent. The notice shall include the information in the affidavit under sub. (1g) and the heir, trustee or person who was guardian of the decedent at the time of the decedent's death shall give the notice by certified mail, return receipt requested.

(b) An heir, trustee or person who was guardian of the decedent at the time of the decedent's death who files an affidavit under sub. (1g) that states that the decedent or the decedent's spouse received the family care benefit under §46.286, medical assistance under subch. IV of ch. 49, long-term community support services funded under §46.27(7) or aid under §§49.68, 49.683 or 49.685 shall attach to the affidavit the proof of mail delivery of the notice required under par. (a) showing delivery date that is not less than 10 days before the day on which the heir, trustee or person who was guardian of the decedent at the time of the decedent's death files the affidavit.

(2) RELEASE OF LIABILITY OF TRANSFEROR. Upon the transfer to the heir, trustee or person who was guardian of the decedent at the time of the decedent's death furnishing the affidavit with an attached proof of mail delivery if required under sub. (1m) (b), the transferor is released to the same extent as if the transfer had been made to the personal representative of the estate of the decedent.

(2g) OBLIGATION OF AFFIANT. By accepting the decedent's property under this section the heir, trustee, or guardian assumes a duty to apply the property transferred for the payment of obligations according to priorities established under §859.25 and to distribute any balance to those persons designated in the appropriate governing instrument, as defined in §854.01, of the decedent or if there is no governing instrument, according to the rules of intestate succession under ch. 852. An heir or guardian may publish a notice to creditors in the same manner and with the same effect as a trustee under §701.065. This subsection does not prohibit any appropriate person from requesting administration of the decedent's estate under §856.07 or ch. 865.

(2m) RECORDING OF AFFIDAVIT. (a) If an affidavit under sub. (1g) describes an interest in or lien on real property a certified copy or duplicate original of the affidavit shall be recorded in the office of the register of deeds in each county in this state in which the real property is located.

(b) For purposes of a transfer under this section of an interest in or lien on real property, the recording of the affidavit copy or duplicate original constitutes the transfer to the affiant under sub. (1g) of the evidence of the interest in or lien on real property.

(3) APPLICABILITY. This section is additional to §109.03(3) for payment of decedent's wages by an employer directly to the decedent's dependents.

<table>
<tr><td>Address for:</td><td>Department of Health Services<br>Estate Recovery Program<br>P. O. Box 309<br>Madison, WI 53701-0309<br>**NOTE: If you are providing a copy of this affidavit to the Estate Recovery Program or a financial institution, include decedent's social security number on a separate document.**</td></tr>
</table>

PR-1831, 05/16 Transfer by Affidavit ($50,000 and under)    §§711.03(10) and 867.03, Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.
Case 2:19-cv-00845   Filed 06/06/19   Page 3 of 3   Document 1-12
Doc Yr: 2017 Doc# 10685547 Page#3 of 3

GK

## APPLICATION FOR THE
## TERMINATION OF DECEDENT'S INTEREST
## AND CONFIRMATION OF APPLICANT'S INTEREST IN PROPERTY

**DOC # 10709594**

RECORDED
09/08/2017 10:12 AM

JOHN LA FAVE
REGISTER OF DEEDS
Milwaukee County, WI

AMOUNT: 30.00
FEE EXEMPT #: 77.25 (11)
***This document has been
electronically recorded and
returned to the submitter. **

| DECEDENT'S NAME Elzie Cockerham | DATE OF DEATH 04/16/2005 | | |
|---|---|---|---|
| ADDRESS OF DECEDENT AT DATE OF DEATH 704 W. MELVINA STREET | CITY MILWAUKEE | ST WI | ZIP 53206 |

**PRESENTATION OF DEATH CERTIFICATE**
I certify that I have viewed a certified copy of the decedent's death certificate.

*John La Fave*     **September 8, 2017**

REGISTER OF DEEDS SIGNATURE     DATE

*Recording area*

THE INTEREST OF THE DECEDENT IN THE PROPERTY NOTED HEREIN
IS HEREBY TERMINATED/CONFIRMED UNDER THE FOLLOWING STATUTE:
(please check appropriate statute)

☒ s. 887.045 which pertains to real property in which the decedent was a joint tenant, had a vendor's or mortgagee's interest, or had a life estate. (You must provide a copy of the document establishing interest in the real property.)

☐ s. 887.046 which pertains to property of a decedent specified in a marital property agreement; survivorship marital property; or a third party confirmation; or a nonprobate transfer on death as described in s.705.10(1).
(You must provide a copy of the document establishing interest in property.)

Name and return address:

Jerome Cockerham
704 W. Melvina Street
Milwaukee, WI 53206

272-2538

Parcel Identification Number

SEND TAX STATEMENT TO:

Jerome Cockerham

704 W. Melvina St.
Milwaukee, WI 53206

Presentation of recorded document establishing interest in real estate.

| DOCUMENT # | VOLUME/REEL | PAGE/IMAGE | RECORDS/DEEDS |
|---|---|---|---|
| 4330256 | 369 | 745 | |

**Description of the real estate.**     ☐ See Attached

Lot Eighteen (18) in Block Three (3) in Washington Park No. 2, in the North West One-Quarter (1/4) of Section Eight (8), in Township Seven (7) North, Range Twenty-Two (22) East, in the City of Milwaukee, County of Milwaukee and State of Wisconsin.

Physical address: 704 W. Melvina Street, Milwaukee, WI 53206

**Description of personal property (if any) being transferred.**
*You may list savings accounts, checking accounts and securities on attached pages. Indicate person(s) receiving property.*
DECLARATION: I(We) declare that this document is, to the best of my(our) knowledge and belief, true, correct and complete and is in conformity with the provisions and limitations of the Wisconsin Statutes.

| Name and Address (List all remaindermen/ beneficiaries, if more space is needed, attach pages.) | Applicant's Interest in Property (ie: spouse, remainderman, beneficiary) | Applicant Signature (Notarized) (Print or type name below signature) | Date |
|---|---|---|---|
| Daisy M. Cockerham 704 W. Melvina St. Milwaukee, WI 53206 | Spouse | *Jerome Cockerham, Agent* | 9/6/2017 |

| This document was drafted by:(print or type name below) | STATE OF WISCONSIN, County of *Milwaukee* Subscribed and sworn to before me on *September 6, 2017* |
|---|---|
| Attorney Steven E. Berg #1005755 | by the above named person. *Jerome Cockerham* |
| NOTE: SEE DIRECTIONS, Wisconsin Register of Deeds Association Form HT-110 Website Version 05/2010 | Signature of Notary or other person authorized to administer an oath (as per s. 706.06, 706.07) Print or type name: *Steven E. Berg* |
| | Title: Attorney Steven E. Berg    Date Commission Expires:permanent |

THIS IS A STANDARD FORM. ANY MODIFICATIONS TO THIS FORM SHOULD BE CLEARLY IDENTIFIED.

**Exhibit M**

STATE OF WISCONSIN, _____MILWAUKEE_____ COUNTY

**DOC # 10709595**

RECORDED
09/08/2017 10:12 AM

JOHN LA FAVE
REGISTER OF DEEDS
Milwaukee County, WI
AMOUNT: 30.00
FEE EXEMPT #: 77.25 (11)
***This document has been
electronically recorded and
returned to the submitter. **

IN THE MATTER OF

Daisy M. Cookerham
Decedent

**Transfer by Affidavit
($50,000 and under)**

Register of deeds recording area
*Name and return address*
Jerome Cookerham
704 W. Melvina St.
Milwaukee, WI 53206

**Note:** Use black ink only.

272-2538
*parcel identification number*

**UNDER OATH, I STATE:**

1. The decedent, with date of birth 08/29/1926 _____ and date of death 09/12/2011 _____
   was domiciled in _Milwaukee_ County, State of _Wisconsin_, with a mailing
   address of 704 W. Melvina St. Milwaukee, WI 53206.

2. I am: ☒ an heir, having the following relationship to the decedent: Son _____
   ☐ the person who was guardian of the decedent at the time of the decedent's death.
   ☐ trustee of a revocable trust created by the decedent.

3. The total gross value of the decedent's property subject to administration in Wisconsin on the date of decedent's
   death was $ 18,200 _____ (not to exceed $50,000).

4. The decedent:
   ☐ did ☒ did not    receive Medical Assistance/Medicaid.
   ☐ did ☒ did not    receive Family Care and/or Partnership benefits (through a Managed Care Organization MCO/CMO).
   ☐ did ☒ did not    receive benefits from the Community Options Program (COP).
   ☐ did ☒ did not    receive benefits from the Wisconsin Chronic Disease Program.
   ☐ was ☒ was not    patient or inmate of a state or county hospital or institution, or responsible for any person owing an
                       obligation to the state or county.
   Explain: _____
   ☐ The affiant lacks information to complete this section.

5. If the decedent was ever married, complete the following: (If more than one spouse, ☐ **see attached**.)
   Name of spouse: [☐ living or ☒ deceased] Elzie Cookerham

   ☒ Married to decedent ☐ Divorced from decedent    at time of decedent's death.
   The spouse    ☐ did ☒ did not    receive benefits from the Community Options Program (COP).
   The spouse    ☐ did ☒ did not    receive benefits from the Wisconsin Chronic Disease Program.
   ☐ The affiant lacks information to complete this section.

PR-1831, 05/16 Transfer by Affidavit ($50,000 and under)                    §§711.03(10) and 867.03, Wisconsin Statutes
                     This form shall not be modified. It may be supplemented with additional material.

Case 2:19-cv-00845   Filed 06/06/19   Page 1 of 2   Document 1-14

Doc #: 2017 Doc# 10709595 Page# 1 of 2

**Exhibit N**

6. I ask that the following property be transferred to me under §867.03(1g), Wis. Stats.:

| DESCRIPTION OF ASSETS TO BE TRANSFERRED<br>(If real estate, list legal description and tax parcel number. If personal property<br>(including digital property as defined under §711.03(10), Wis. Stats.), specifically describe property<br>including name of financial institutions and account numbers, if any.) | GROSS VALUE |
|---|---|
| Lot Eighteen (18) in Block Three (3) in Washington Park No. 2, in the North West One-Quarter (1/4) of Section Eight (8), in Township Seven (7) North, Range Twenty-Two (22) East, in the City of Milwaukee, County of Milwaukee and State of Wisconsin.<br><br>Street address: 704 W. Melvina Street, Milwaukee, WI 53206 | $18,200 |

7. By accepting the decedent's property under this section, I assume a duty to apply the property transferred for the payment of obligations according to priorities established under §859.25, Wis. Stats., and to distribute any balance to those persons designated in the appropriate governing instrument, as defined in §854.01, Wis. Stats., or if there is no governing instrument, according to the rules of intestate succession under ch. 852, Wis. Stats.

8. If a decedent or decedent's spouse has received any of the benefits that are listed on page 1 of this affidavit or if unknown, a duplicate affidavit must be sent by certified mail with return receipt requested to the Estate Recovery Program for the State of Wisconsin, Department of Health Services prior to submission of this affidavit for recording. The proof of prior mailed notice should accompany the affidavit for recording, with the delivery date on the mail receipt being at least 10 days prior.

State of Wisconsin
County of Milwaukee
Subscribed and sworn to before me on 9/6/2017

_____
Notary Public/Court Official

Steven E. Berg
Name Printed or Typed

My commission/term expires: is permanent

_____
Signature

Jerome Cockerham
Name Printed or Typed

704 W. Melvina Street
Address

Milwaukee, WI 53206

This document was drafted by: Attorney Steven E. Berg
_____
Print or Type Name

☐ Register of Deeds Office viewed the certified mail receipt.

ONLY if this affidavit describes an interest in or lien on real estate, then a certified copy or duplicate original of this affidavit must be recorded with the register of deeds in each county in Wisconsin where the real estate is located.

PR-1831, 06/16 Transfer by Affidavit ($50,000 and under)          §§711.03(10) and 867.03, Wisconsin Statutes

This form shall not be modified. It may be supplemented with additional material.

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| | |
|---|---|
| HUD Field Office | |

To  HUD/OFFICE OF GENERAL COUNSEL

| 1. FHA Case Number<br>581-2061047 | 2. Account Number<br>581-2061047 |
|---|---|
| 3. Mortgagor/Owner<br>ELZIE COCKERHAM | 4. Social Security Number<br>XXX-XX-0454 |
| 5. Co-Mortgagor<br>DAISY COCKERHAM | 6. Social Security Number<br>XXX-XX-XXXX |

7. Name of original mortgagor if different from above

8. Property Address
704 W MELVINA ST
MILWAUKEE, WI 53206

## Part 1. General Account Information

| Original Mortgage Amount | Unpaid Principal Balance<br>$29,823.83 | Escrow Balance | Interest Rate<br>3.620 | Term |
|---|---|---|---|---|
| Type of mortgage<br>HECM | Last payment applied | Date | Date of oldest unpaid Interest Installment | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Please Note:** The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

## Part 2. Assumption Information / Bring Current Information

Other mortgage is to be assumed: 1. Remit certified funds to bring account current; 2. Provide a copy of the conveyance document; 3. Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4. Provide verification of Hazard Insurance coverage.

| Bring Current Amount | |
|---|---|
| Principal | $29,823.83 |
| Interest | $25,504.37 |
| Tax Escrow Required | |
| Service Charge | $7,380.00 |
| Late Charge | |
| Tax Advance | |
| Other (specify) MIP | $4,920.14 |
| Interest on Advances | |
| Total to Bring Current<br>as of: 09/21/2018 | $67,628.34 |
| Current Monthly Payment<br>Principal and Interest | |
| Tax Escrow | |
| Service Charge | |
| Total Monthly Payment | |

See back of page if mortgage is 235

## Part 3. Payoff Information

| Principal Balance | $29,823.83 |
|---|---|
| Interest Due | $25,504.37 |
| Service Charge | $7,380.00 |
| Late Charge | |
| Returned Check Charge | |
| Advance Amount | |
| Tax Escrow Applied | |
| Other (specify) MIP | $4,920.14 |
| Interest on Advances | |
| Taxes Paid but Not Posted | |
| Total Payoff Amount<br>as of: 09/21/2018 | $67,628.34 |
| Per Diem Service Charge | |
| Per Diem Interest | $7.63 |

| Prepared by<br>ALYSSA WARSTLER | Title<br>CASH ANALYST | Date<br>09/21/2018 |
|---|---|---|

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Certified by<br>KAYE JAMES | Title<br>CASH MANAGEMENT | Date<br>09/21/2018 |
|---|---|---|

form HUD-698 (1/89)

**Exhibit O**

**Sensitive Information:** The information collected on this form is considered sensitive and is protected by the Privacy Act. The Privacy Act requires that these records be maintained with appropriate administrative, technical, and physical safeguards to ensure their security and confidentiality. In addition, these records should be protected against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom the information is maintained.

**If the Mortgage is receiving subsidy**

Anniversary date

Date of last recertification

Monthly subsidy

Mortgagor's payment

Full mortgage payment

**Affidavit as to Status of Account**

State of OKLAHOMA

County of OKLAHOMA

On this 21 day of (mm/yyyy) 09/18 ,

personally appeared before me, the undersigned attesting officer, HEATHER CAMPBELL

who being sworn on oath, says that he/she is the LOAN SERVICING MANAGER

of the Department of Housing and Urban Development, a duly constituted agency of the United States of America, that he/she is duly authorized to make this affidavit; that the foregoing statement was prepared from the books and records of the Department of Housing and Urban Development on 09/21/2018 , and that affidavit has cusody of the said books and records and to the best of his/her knowledge and belief the foregoing statement correctly reflects the status of the account as of 09/21/2018 .

Sworn and Subscribed before me this 21 day of 09/2018 .

Notary Public

KENZIE MCCRARY
Notary Public
State of Oklahoma
Commission # 18003588 Expires 04/09/22

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box: ☐ Green Bay Division ☐ Milwaukee Division

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    (b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    (c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**.     Example:     U.S. Civil Statute: 47 USC 553
    Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases**. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.